THEODORE H. KOELLING, Appellant, v. AUGUST GAST BANK NOTE AND LITHOGRAPHING CO. et al., Respondents.

St. Louis Court of Appeals, January 20, 1903.

1. **Replevin:** CHATTEL MORTGAGE: EVIDENCE: ERROR: PRACTICE: TRIAL. In replevin, where defendant claimed title by foreclosure of a chattel mortgage given by one whose title plaintiff denied, it was not error to admit evidence tending to establish the indebtedness of the mortgagor to the defendant.

2. ———: ———: ———: AGENT. In replevin where both parties deny that a purchaser of the property at a chattel mortgage foreclosure was acting as the agent of its grantor, instructions ignoring such controlling issue were properly refused.

3. ———: EVIDENCE. In replevin, evidence examined, and *held* sufficient to support a finding that the purchaser of the property at a certain chattel mortgage sale acted as agent of defendant's grantor, rather than of plaintiff's.

4. **Instructions:** PRACTICE; TRIAL. Requested instructions are properly refused which are covered by instructions given.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Joseph T. Tatum* for appellant.

(1) The court should have given the instructions asked by plaintiff. The deliveries to Filley and to plaintiff were effective. "Symbolic delivery by bill of sale is sufficient to vest title and a right to replevy." Collins v. Wayne Lumber Co., 128 Mo. 451. (2) Possession by agent is actual, not constructive possession by the principal, and will support a possessory warrant by the latter against one who wrongfully take possession. Cobbey on Replevin, sec. 108. (3) It is not es-

sential that the plaintiff should ever have had the actual possession, but he must have had such title that he was authorized to reduce the goods to his possession at the commencement of the suit.   Cobbey on Replevin, sec. 89.   (4) The club was not incorporated, did not even exist, at the time of purchase; if the bill of sale had been made to it, instead of to Hedges, the agent of Filley, it would have been void.   There is no estoppel, no equity against plaintiff.   Reinhardt v. Mining Co., 107 Mo. 616.   (5) The attempted transfer by mortgage and sale forfeited the permission to the club to use the property, and gave to Filley or his assignee the right to immediate exclusive possession; the acts of Ambs and the Gast company through Wall were trespass, though actual trespass on the part of defendant is not essential; in fact plaintiff was bound not to stand by and permit the property to be sold and taken without interfering. Skinner v. Stouse, 4 Mo. 93.   (6) The facts do not establish a resulting or implied trust in Mr. Filley.   The following culled from the decisions in this State clearly set forth the well-established rules:   "There should be no room for a reasonable doubt as to the facts relied upon to establish a resulting trust.   A mere preponderance of the evidence is not sufficient."   "The evidence must be so clear, strong and unequivocal and so definite and positive as to leave no room for doubt as to the existence of the trust."   "It is not sufficient even to show the possession of the money and the purchase of the property by the alleged trustee.   The money must be clearly and distinctly traced into the property.   It must be clear that the property has been paid for out of the trust money."   Johnson v. Quarles, 46 Mo. 423; Adams v. Burns, 96 Mo. 361; Burdett v. May, 100 Mo. 13.   (7) "The doctrine of resulting trusts applies in all its phases to personal as well as real property."   10 Am. and Eng. Ency. of Law, 14; Flint on Trusts, sec. 68; Kramer v. McCaughey, 11 Mo. App. 426.

No brief for respondents.

REYBURN, J.—This, an action in replevin, first brought before a justice of the peace in the city of St. Louis, was appealed by the defendants August Gast Bank Note and Lithographing Company, Louis J. W. Wall and Joseph B. Ambs, to the circuit court, where March 12, 1902, upon trial before a jury, a verdict and judgment were rendered in their favor. The defendant lithographing company claims title to the property by foreclosure of a chattel mortgage executed by the Good Government Republican League Club, and plaintiff derives his title through a bill of sale executed by Chauncey I. Filley. In October, 1898, the property in question belonged to the Union League Club, a republican political organization of St. Louis, and upon the disruption of this club, was sold under the provisions of a chattel mortgage, and at this foreclosure sale was bid in by Isaac A. Hedges at the price of $100. Hedges made the purchase in a representative capacity, and this proceeding presents the dispute whether in such purchase Hedges acted as the agent of Filley himself, personally, or as representative of an association of gentlemen, including Filley, then in course of promoting a new political club, of which afterwards, January 21, 1899, the organization was perfected, and a charter finally issued February 10, 1899 under the title "Good Government Republican League Club of St. Louis," Filley becoming a member thereof, as he stated, on January 21, 1899. While those interested in the organization of the new political club were casting about for suitable quarters for a clubhouse, they received information that differences had arisen among the members of the Union League Club, which might render it practicable to acquire the latter's clubhouse, number 2721 Pine street, then furnished and equipped for such purposes. Negotiations were therefore entered upon and cautiously conducted by those interested in the new enterprise, with those in control of the Union League Club, and an arrangement finally reached between them that upon payment by the new club's promoters of outstanding debts of the old club, aggregating about $700,

the lease of the clubhouse of the latter, together with
the furniture and equipment contained therein, would
be transferred for the purposes of the new club.    In
these negotiations the Union League Club was repre-
sented by R. J. Delano, and Hedges acted on behalf of
the members of the club proposed to be created.    Filley
had charge of and managed the organization of the
new club, and was entrusted by his associates with the
entire charge of the details.    Though Hedges dealt di-
rectly with Delano, he reported progress from time to
time to Filley, and the proposed members of the new
organization came together several times at the dwell-
ing of Filley to discuss and form their plans, and no
step was taken without his approbation.    After the terms
of purchase had been arranged with Delano, Filley un-
dertook to raise the funds required, and gave Hedges
on December 14, the day of sale under the chattel mort-
gage, the sum of $100 with which to bid in the property
at that price, as had been agreed upon, and Hedges,
accompanied by John P. Hermann, attended the sale,
and according to arrangements previously made, bid
in at the foreclosure sale all the furniture of the club-
house at the stipulated price.    The testimony estab-
lished that Filley solicited subscriptions from a number
of parties, and obtained a considerable sum of money
for the purposes of the Union League Club, and the
receipt of these funds was not denied by Filley, but
he insisted they were intended solely for the payment
of the indebtedness of the Union League Club, and
were not for the purchase of its furniture and equip-
ment, and were all collected after the sale under the
chattel mortgage between the 14th and 20th of Decem-
ber.    Upon making the successful bid at the chattel
mortgage sale, Hedges took from Delano, as trustee, a
bill of sale, conveying to himself individually the prop-
erty purchased, and delivered it to Filley, who caused·
it to be recorded.    After the sale, the property which
was contained in the clubhouse of the Union League
Club remained therein undisturbed, and passed into the
possession and use of the Good Government Club after

its incorporation, and continued in its possession till about the date of the institution of this action. No bill of sale was ever executed by Hedges transferring the property purchased, to the Good Government Club, but he retained the title in his own name during the period that he was treasurer of the new organization, and when he withdrew therefrom·he says he executed a bill of sale of the property to Filley, Wall and Brownell; these latter-named parties were liable as guarantors for the rental of the premises occupied by the Union League Club, and Hedges testified he executed this bill ·of sale for the purpose of securing them as such guarantors. Plaintiff's counsel, however, asserted that Hedges executed no bill of sale for the furniture, but had reference to assignment by indorsement of the lease of the clubhouse, and in the incomplete condition of the record in this regard, this version will be adopted.

On October 18, 1901, the day prior to this action, Filley executed a bill of sale to plaintiff for the property in question; on September 25, 1901, the Good Government Club executed a chattel mortgage, duly recorded, conveying the same property to secure, to the lithographing company, the payment of a note for $391.62, the latter instrument reciting that the property mortgaged was the same acquired by the club from Hedges. On October 19, 1901, Wall enforced the terms of the chattel deed of trust by foreclosure sale, at which defendant Ambs, in the interest, however, and as· representative of the lithographing company, became the purchaser, and received possession of the property. The parties to the suit stipulated that the question of damages was not to be considered, and that if the verdict should be for the plaintiff, judgment should be for possession, and defendants should pay the costs, and that if the verdict should be for the defendant, plaintiff should pay the costs, and defendants should have their election to take the property, or $400, its agreed value.

The court·of its own motion gave the following instruction:

"Gentlemen of the jury: The question for you to determine in this case is, who was, on October 19, 1901, entitled to the possession of the personal property replevined in this case, about the description of which there is no dispute?

"If from the evidence you find and believe that the said personal property was, in December, 1898, purchased by Isaac A. Hedges as the agent for Chauncey I. Filley, and that the money paid therefor was the money of said Chauncey I. Filley, and that thereafter the said Chauncey I. Filley assigned his interest therein to the plaintiff, Theo. H. Koelling, then your verdict should be for the plaintiff.

"If, on the other hand, from the evidence you find and believe that the money with which Isaac A. Hedges purchased the said personal property was not the money of Chauncey I. Filley, but belonged to the Good Government Club, or was the proceeds of subscriptions in that behalf, and that the personal property therefore was not bought for the said Chauncey I. Filley but for the said club, and that thereafter the said club mortgaged the said property, and at a sale made under the said mortgage the defendant, August Gast Bank Note and Lithographing Company, purchased the said personal property, then your verdict should be for the defendant."

And refused to give the instructions asked by plaintiff, as follows:

"1. The jury are instructed that there is no evidence to show that the Good Government League Republican Club had any title to the property in the suit, and the verdict must be for plaintiff.

"2. The court instructs the jury that there is no evidence to show that the title to the property in suit was ever in the Good Government League Republican Club, and that the mortgage shown in evidence for the defendant, under which it claims to be a purchaser, conveyed no title to the defendant, August Gast Bank Note and Lithographing Company.

"3.   The jury are instructed that if they believe from the evidence that the property in suit was purchased with the money of Chauncey I. Filley, at his instance and direction, then said Filley became the owner of said property; and, if while such owner, said Filley conveyed same to plaintiff, and delivered to him a bill of sale thereof, then plaintiff became the lawful owner of said property.

"4.   The court instructs the jury that if they believe from the evidence that on or about December 14, 1898, Isaac A. Hedges, acting as the agent and representative of Chauncey I. Filley, purchased from the Union League Club the property described in plaintiff's statement, and that the money for the purchase of said property was furnished by said Chauncey I. Filley, from his own means, and that said Chauncey I. Filley afterwards conveyed said property to plaintiff, and delivered to plaintiff a bill of sale of said property, then the verdict should be for plaintiff.

"5.   The jury are instructed that if they believe from the evidence that at the time this suit was commenced, the plaintiff was the owner of the property described in his statement, and that the defendant, August Gast Bank Note and Lithographing Company, through any person acting for or in its behalf, took, and at said time held, possession of said property, and had attempted to make a sale thereof, then the verdict must be for plaintiff."

The plaintiff assigns as error the admission of the testimony tending to establish the indebtedness of the Good Government Club to defendant lithographing company, which was secured by the chattel mortgage under which the defendants claim title, but the trial court committed no error in admitting this testimony, as it was competent, in fact essential, to establish the validity of the chattel mortgage under which title was asserted by defendants.

The instructions asked by plaintiff and refused by the court were properly refused, either because of their peremptory nature and that they ignored the controlling

issue of fact of ownership of the property in dispute, or in so far as they were correct are fully and completely embraced in the comprehensive instruction given by the court for the direction of the jury.

The case presented no legal issues, but solely a distinct issue of fact, which was fairly submitted to the jury in the instruction given by the court, and the verdict of the jury is fully sustained by the evidence offered by the defendants. The doctrine of resulting trusts lacks application to the facts herein presented, as it is merely a question of who was the actual purchaser at the original sale under the chattel mortgage at which Hedges bid in the property.

The verdict of the jury is amply supported by the evidence, and the judgment of the lower court is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.